UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AQUA LUNG AMERICA, INC., | CASE NO. C12-56 MJP |
| Plaintiff, | ORDER ON MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| WATERMARK SCUBA, INC., | |
| Defendant. | |

The Court, having received and reviewed:

1. Plaintiff Aqua Lung America, Inc.'s Motion for Preliminary Injunction (Dkt. No. 24)

2. Defendant's Response to Motion for Preliminary Injunction (Dkt. No. 26)

3. Reply in Support of Plaintiff Aqua Lung America, Inc.'s Motion for Preliminary Injunction (Dkt. No. 28)

4. Plaintiff's Notice of Supplemental Authority Regarding Aqua Lung America, Inc.'s Motion for Preliminary Injunction (Dkt. No. 30)

and all attached declarations and exhibits, makes the following ruling:

1    IT IS ORDERED that the motion for preliminary injunction is DENIED.

2    **Background**

3    Plaintiff holds a patent ("the '959 patent") for a "Locking Knife and Sheath," a version of
4    a divers' knife which locks the knife into its sheath upon insertion and releases it by squeezing
5    on the handle.  Plaintiff sells the knife under a variety of brand names ("Deep See Big Squeeze,"
6    "Jack Knife," "Squeeze Lock" and "EZ Lock") and claims that Defendant's "Nite-Edge" diving
7    knife infringes on several claims of the '959 patent.

8    Plaintiff has limited its allegations of infringement to Independent Claim 1, Dependent
9    Claims 3, 4, 8, 9, and 10, and Independent Claim 11.  Defendant refused to stipulate to an
10   injunction on sales of the Nite-Edge and Plaintiff filed the instant motion requesting that further
11   sales of Defendant's "Nite-Edge" knife be enjoined pending the outcome of this litigation.

12   **Analysis**

13   <u>Standard for preliminary injunction</u>

14   A party seeking a preliminary injunction must demonstrate that:

15       1)  there is a reasonable likelihood of success on the merits;

16       2)  failure to grant the injunction will result in irreparable injury to the movant;

17       3)  the balance of hardships tips in the favor of the movant; and

18       4)  the injunction is in the public interest.

19   <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 20 (2008); <u>Titan Tire Corp. v.</u>
20   <u>Case New Holland, Inc.</u>, 566 F.3d 1372, 1375-76 (Fed.Cir. 2009).

21   <u>Likelihood of success on the merits</u>

22   Defendant does not claim that the patent is invalid.  Plaintiff is proceeding on a theory of
23   literal infringement.  Since Dependent Claims 3, 4, 8, 9, and 10 all incorporate elements of Claim

24

1, this analysis will focus on the alleged infringements on Independent Claims 1 and 11. And, since Plaintiff must prove that Defendant's knife infringes on <u>every</u> element of claims at issue, the analysis will concentrate on those elements upon which Defendant denies its knife infringes.

<u>*Claim 1*</u>

The relevant portions of Claim 1 read as follows (the contested elements identified by Plaintiff are in **bold**; those elements identified by Defendant are in *italics*):

> *****
> an elongated body member defining a blade compartment for receiving said blade of the knife and **a locking notch for cooperating with said locking tab**, *said elongated body member being configured such that insertion of said blade into said blade compartment automatically causes said locking tab to move inwardly towards said first side portion of said handle and then,* **upon further insertion of said blade into said compartment, causes said locking tab to move towards said locking position to cooperate with said locking notch to lock said blade in said blade compartment**, said knife being removable from said blade compartment by simultaneously moving said locking lever to said release position and withdrawing said blade from said blade compartment.

Plaintiff. Ex. B, '959 Patent, col. 5:44 – 6:5.

The difficulty presented by the "preliminary" nature of Plaintiff's motion becomes apparent at this juncture. The Court has construed no claims or claim terms; the exact meaning of the various words and phrases which define Plaintiff's patent has yet to be determined. In order for this Court to find that Plaintiff has a reasonable likelihood of prevailing on the merits of its allegations concerning Claim 1, it would be necessary to find – reading on the face of the patent and without further briefing or explication by either side – a reasonable likelihood that Plaintiff can establish that Defendant's knife, upon "insertion" of its blade into the blade compartment, "automatically causes [a] locking tab to move inwardly."

Based on the Court's examination of the drawings of the accused device (submitted by both parties as part of their briefing) and the knife itself (samples of which were submitted as exhibits by both sides), it cannot be said to a reasonable certainty that "insertion" of the blade

into the blade compartment automatically causes any such motion as described in the disputed claim language. As soon as any part of the blade enters the blade compartment, it seems possible that "insertion" has begun. In fact, the blade must be almost <u>fully</u> inserted before any action occurs which involves its locking tabs (or "locking levers," as labeled by Defendant).

The Court cannot find at this point in the proceedings that Plaintiff has a likelihood of prevailing on the merits of its argument concerning Claim 1.

<u>Claim 11</u>

The relevant portions of Claim 11 read as follows (again, the contested elements identified by Plaintiff are in **bold**; those elements identified by Defendant are in *italics*):

11. A knife and knife receptacle combination, comprising:

> * * * *
> at least one locking lever swingingly attached to said first side portion of said handle, said locking lever having a first locking portion moveable between a locking position and a release position…
>
> * * * *
> an elongated body member defining a blade compartment for receiving said blade of the knife **and a second locking portion for cooperating with said first locking portion**, *said elongated body member being configured such that insertion of said blade into said blade compartment automatically causes said locking portion to move inwardly towards said first side portion of said handle and then,* **upon further insertion of said blade into said compartment, causes said first locking portion to move towards said locking position to cooperate with said second locking portion to lock said blade in said blade compartment, and wherein said first locking portion is a recess** *and said second locking portion is an outwardly projecting tab for being received in said recess.*

Plaintiff. Ex. B, '959 Patent, col. 6:34-64.

The same analysis which was made above concerning whether "insertion" of the blade into the blade compartment "automatically" causes the inward motion of a locking portion of the accused device applies to this claim as well.

ORDER ON MOTION FOR PRELIMINARY
INJUNCTION- 4

Additionally, the language of this claim raises the issue of whether the "first locking portion" of the accused device contains a "recess" into which a "projecting tab [is] received." While a final determination of this issue may have to await the test of claim construction, the Court is not prepared to rule, as a preliminary matter, that Plaintiff has a reasonable likelihood of establishing that any portion of the locking tab or lever on the accused device contains a "recess." It appears, rather, to be a smooth curved surface which is not "recessed" in any fashion.

Plaintiff has not yet established a reasonable likelihood of prevailing on the merits of its argument regarding infringement of Claim 11 by Defendant's knife. Accordingly, the Court finds that the first element of the test for issuance of a preliminary injunction has not been satisfied.

<u>Irreparable harm</u>

Absent a clear showing of validity and infringement, there is no presumption of irreparable harm in a preliminary injunction proceeding. <u>Nutrition 21 v. U.S.</u>, 930 F.2d 867, 871 (Fed. Cir. 1991)(*citing* <u>Datascope Corp. v. Kontron, Inc.</u>*,* 786 F.2d 398, 400 (Fed.Cir. 1986)). Plaintiff cites a plethora of cases generally indicating that loss of revenue, goodwill and research and development support constitute irreparable harm and that a directly competitive accused device invites a finding of irreparable injury.

Plaintiff's problems regarding the "irreparable injury" element are twofold. Some of its legal precedent relies on cases where, because of a strong showing of likelihood of success on the merits, irreparable injury was presumed (e.g., <u>Bio-Technology Gen. Corp. v. Genentech, Inc.</u>, 80 F.3d 1553 (Fed.Cir. 1996)). Other precedential authority cited by Plaintiff concerns litigation where the moving party produced proof of lost market share, the strength of its brand

1 name and other factors relevant to the injuries suffered by introduction of an accused device into the market (e.g., Pittway Corp. v. Black & Decker, Inc., 667 F.Supp. 585 (N.D.Ill. 1987)).

Because Plaintiff has not established a reasonable likelihood of success on the merits, there is no presumption of irreparable harm. And, outside of the conclusory allegations of its Director of Engineering and Research and Development (*see* Decl. of Thorstenson), Plaintiff has adduced no evidence of loss of revenue, market share, goodwill, shelf space or any of the other factors which combine to prove injuries which cannot be made whole by monetary damages.

Plaintiff has not succeeded in establishing the second element of the test for issuance of a preliminary injunction.

Balance of hardships

Again, the legal support for Plaintiff's position that the balance of equities tips in its favor is found in cases where the requesting party has made a "strong showing of validity and infringement." Atlas Powder Co. v. Ireco Chemical, 773 F.2d 1230, 1234 (Fed.Cir. 1985). That is not the case here.

What has been established is that Plaintiff is a multimillion dollar international corporation and that Defendant is a six-person organization with an average gross annual revenue of less than a million dollars over the past five years. Def. Ex. A, Decl. of Justinen, ¶¶ 9-10. Defendant's annual 2013 catalogue is currently in production, and granting the preliminary injunction would necessitate a revision of the catalogue with its attendant delay and added expense. Id., ¶ 4.

The Court cannot say that the threatened injury to Plaintiff if the injunction is not granted outweighs the threatened harm to Defendant if the injunction is granted. The third element of the test is not established in Plaintiff's favor.

ORDER ON MOTION FOR PRELIMINARY
INJUNCTION- 6

<u>Public interest</u>

As with much of its authority, Plaintiff's precedential support for its position that "no public interest is served by allowing patent infringement" is based on a case which held that "[w]hen the validity and infringement of a patent are clear, the public interest certainly favors the protection of those products for the statutory period granted under the patent law." <u>Telebrands Direct Response Corp. v. Ovation Communications, Inc.</u>, 802 F.Supp. 1169, 1179 (D.N.J. 1992).

The infringement of the patent is not yet clear, and the Court cannot find that the public interest is clearly served by the grant of a preliminary injunction under these circumstances.

**Conclusion**

Having failed to establish any of the requisite elements for the granting of a preliminary injunction, the Court finds that Plaintiff is not so entitled and DENIES its motion.

The clerk is ordered to provide copies of this order to all counsel.

Dated: November 2, 2012.

Marsha J. Pechman
United States District Judge